(82 South. 127)

LEWIS v. WALLACE. (1 Div. 81.)

(Supreme Court of Alabama. May 15, 1919.)

1. APPEAL AND ERROR ⟊1056(4)—REVIEW—HARMLESS ERROR—EVIDENCE.

The rulings on evidence which was admissible only as to proper measure of damages, if error, were harmless, where verdict was for defendant, finding against plaintiff even as to nominal damages.

2. TRIAL ⟊253(4) — INSTRUCTIONS — IGNORING DEFENSES.

In action for death of an employé requested instruction ignoring all evidence relating to contributory negligence and assumption of risk was properly refused.

3. DEATH ⟊104(6)—ACTION FOR DAMAGES—INSTRUCTIONS.

In action for death of employé, based on breach of common-law duty and on the Employers' Liability Act, a charge as to measure of damages which refers to Employers' Liability Act and the homicide statute, but fails to designate the particular statute applicable, is properly refused; the measures of damages under the statutes being different.

4. DEATH ⟊95(1) — EMPLOYÉ — MEASURE OF DAMAGES—APPLICABILITY OF STATUTE.

In action for death of employé under Employers' Liability Act, the measure of damages provided for under the homicide statute, is inapplicable; the damages being governed by Code 1907, § 3912.

5. TRIAL ⟊240 — ARGUMENTATIVE INSTRUCTION.

A charge, stating that failure to provide rollers for a saw may be actionable negligence is properly refused, as argumentative.

6. APPEAL AND ERROR ⟊1056(6)—REVIEW—HARMLESS ERROR.

Exclusion of plaintiff's testimony was harmless, where defendant would have been entitled to an affirmative charge, even though such evidence had been admitted.

Appeal from Circuit Court, Mobile County; Norville R. Leigh, Jr., Judge.

Action by Edward Lewis, administrator, against J. R. Wallace. Judgment for defendant, and plaintiff appeals. Affirmed.

Brooks & McMillan, of Mobile, for appellant.

Webb, McAlpine & Grove, of Mobile, for appellee.

MAYFIELD, J. Appellant brought this action to recover damages for the wrongful death of his intestate. The relation of master and servant is averred and shown by the undisputed proof to have existed between the defendant, Wallace, and plaintiff's intestate at the time of the accident resulting in intestate's death.

One count of the complaint, however, was based on the common-law duty to furnish the servant with a reasonably safe place in which to work; the other under the first subdivision of the Employers' Liability Act (Code 1907, § 3910), as for a defect in the ways, works, machinery, etc.

The trial was had on the general issue and special pleas of contributory negligence, assumption of risk, etc. The result was verdict and judgment for the defendant, and plaintiff appeals.

[1] The chief assignments of error relate to rulings on evidence, which were admissible only as to the proper measure of damages. Any error, if such there be, as to these rulings affirmatively appears to have been harmless, because the verdict was for defendant, finding against plaintiff even as to nominal damages. If a reversal on other grounds should follow, we would treat them as a guide on another trial; but as we find no error it is not necessary to treat them.

[2, 3] The trial court refused two charges, which we number 1 and 2, as to which separate errors are assigned. The charges are as follows:

(1) "The court charges the jury that the purpose of the statute on which this action is based is to prevent homicide and if the death of Paul Lewis was proximately caused by defendant's negligence in failing to provide a roller at his edger, the damages recoverable are such as seem to the jury to be just under all the circumstances."

(2) "The court charges the jury that a failure by one operating a mill and edging machine to provide roller at his edging saw may be such a defect in the ways, works, machinery and plant of the owner as will entitle the estate of an

---

⟊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

employé, whose death is proximately caused by such failure, to damages."

The charge was properly refused, because it ignores all evidence as contributory negligence and assumption of risk. It also possessed misleading tendencies as to the measure of damages. If the recovery had been under the count declaring under the Employers' Liability Act, then the damages would be entirely compensatory, and not such as the jury might assess. The measure of damages under the Employers' Liability Act, and under the Homicide Statute, as it is usually designated, is entirely different as for wrongful death.

The charge fails to designate the particular statute to which it would be applicable. Moreover, we do not desire to hold that there could be a recovery in this case under the pleadings and proof under the Homicide Statute (section 2486 of the Code), to which alone this charge could be referred.

[4] Whether this statute can ever apply where the relation of master and servant is averred and relied upon, and shown without dispute, or whether section 3912 of the Code exclusively applies in such cases, we do not decide or intimate any opinion. It is certain that section 3912 alone applies when the action is under any subdivision of the Employers' Liability Act, of which section 3912 is only a part. If, however, the liability is as for any of the common-law duties of the master to the servant, then it may be doubtful as to which applies or as to whether either applies exclusively.

There have been numerous cases brought under both statutes where the relation of master and servant existed, and where there were counts claiming under the common-law duties and under the Employers' Liability Act, but no point seems to have been made as to which particular count the verdict and damages were referable. We repeat, we decide nothing and intimate no opinion by this reference, but merely desire to call attention to the fact, often decided, that the measure of damages under the two sections are entirely different, and the trial court and opposing parties ought to be informed under which statute the plaintiff is proceeding, or whether he is proceeding under both. Many errors would be saved if distinction and differences were kept in mind during the trials.

[5] Charge 2 was nothing more than an argument. Of course, the failure to provide rollers for an edging saw might, or might not, be such a defect as to make the master liable as for the death of one of his servants, owing to other circumstances. The charge does not affirm or deny that such failure would be actionable negligence; it merely states that it may be, which is a mere argument, and calculated to mislead the jury. In this particular case its tendency to mislead is certain.

[6] In this case the undisputed evidence showed that the particular injury would have resulted with or without the defect complained of. It is shown without dispute the rollers, if provided and placed where plaintiff claimed they should have been placed, would not have prevented the accident.

The evidence showed without dispute that deceased put into the edger machine a thick piece of plank while a thin one was going through it, and that this made the plank or board kick and strike him which produced his death. All the witnesses who testified on the subject said that, if a thick piece was fed into the machine on top of a thin one, it would kick back, as it did in this case, and, no amount or kind of rollers would prevent it so kicking. One witness said: -

"The edger stands in front, and the edging table is on the end and in front of the saw. The purpose of the top roller is to hold the lumber steady. The feeder has already shoved the lumber in. The live roller is turning all the time. This is not dangerous if you don't put a thick piece behind a thin piece. The danger would not be obviated if you had a hundred rollers and put in a thick piece; it is liable to kick back just the same."

Another said:

"You run a board through, and when you follow it with a thicker piece it will sometimes allow the strip on the side to come back. It don't make any difference whether you have the front roller or not; the same piece would raise both rollers. Some De Loach edgers have the press rollers and some do not; the front roller would not protect the edger."

Another witness testified:

"If a press roller had been in front or behind and a thick piece passed through it would have made no difference in respect to the piece kicking back. It would catch inside and throw it back, and it would have made no difference whether there were two or one rollers there, because when it raised there is nothing to hold it, no matter how thick it was; the saw came back and the rollers are there to pull the lumber through. It would have shot through whether press rollers were in front or behind if the piece is big enough to hold the rollers."

The plaintiff in rebuttal offered the witness Kirk, who well summarized the whole of the evidence. He says:

"That he had knowledge of the lumber business, and operates a mill, and has been for several years employed as edger. That some edgers do and others do not have press rollers in front of the edge saw. Witness don't know whether a press roller in front of the edger would add to the safety of the man edging or not, nor whether it would prevent lumber from kicking back from the edger. Edgers all kick sometimes. Witness don't know the purpose of the top roller. It is claimed as an additional

safety, but witness don't know whether it does or does not. It is the feed roller that carries the board into the saw. Some edgers have the press roller in front and some do not. Some people prefer not to have them in front. They claim that they can see to put the lumber into the saw better. The press roller behind catches the lumber and holds it, unless you put a piece in and raise it up, witness supposes. If you have a press roller in front and a press roller behind and a thin piece was going through, and you shoved in a thick piece and raised the press roller up, that thin piece would kick forward, and it would not matter whether you had one press roller or two press rollers, but would raise up the thick piece."

All of the evidence, however, shows that this particular accident would not have been prevented if the rollers had been attached, as some claim they ought to have been. There was conflict or difference of opinion as to whether the rollers in question were proper or necessary on a machine like the one in use, and whether or not the absence constituted a defect.

Under this theory of the case, the general affirmative charge could have been properly given for the defendant with or without the evidence excluded; hence there could be no injury to plaintiff in excluding it.

It results that the judgment appealed from must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.